Ruben O. GIERBOLINI ROSA,
et al., Plaintiffs,

v.

BANCO POPULAR de PUERTO
RICO, Defendant.

Civil No. 93–2102 (JAF).

United States District Court,
D. Puerto Rico.

June 28, 1996.

Benny Frankie Cerezo, San Juan, PR, for Plaintiffs.

Ricardo L. Ortiz–Colon, Cesar T. Alcover, Fernando Van Derdys, Fiddler Gonzalez & Rodriguez, San Juan, PR, for Defendant.

## *OPINION AND ORDER*

FUSTE, District Judge.

Plaintiffs, Carmen Nidia Gierbolini–Marrero, her husband, Rubén Oscar Gierbolini–Rosa, and their children, Oscar, Carlos Rubén, Ricardo José, and Nirin Mirnel, have filed suit against defendant, Banco Popular de Puerto Rico, for damages arising from alleged defamatory statements allegedly made by Banco Popular to the Puerto Rico Department of Treasury and the United States Bankruptcy Court. Having reviewed plaintiffs' motion, defendant's opposition, the Puerto Rico Civil Code, and jurisprudence of the Puerto Rico Supreme Court, we conclude that plaintiffs have failed to adduce sufficient evidence of the variety specified in Fed. R.Civ.P. 56 to withstand defendant's motion for summary judgment. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986); *Lipsett v. University of Puerto Rico,* 864 F.2d 881 (1st Cir.1988).

## I.

### *Facts*

For twenty-five years, Carmen Nidia Gierbolini–Marrero served as the Platform Officer at the Coamo branch of Banco Popular, where she oversaw daily, routine operations. In early 1992, the bank conducted an investigation into complaints of unauthorized withdrawals from the accounts of bank customers. As a result of this investigation, and despite her claim of innocence, the bank fired Mrs. Gierbolini, along with several bank cashiers. Due to pressing economic obligations arising from the loss of her job, Mrs. Gierbolini and her husband filed for bankruptcy under Chapter 13 of the Bankruptcy Code.

In January 1993, defendant filed a return of information with the Puerto Rico Department of Treasury for $95,387.22 in deferred compensation accruing in favor of Mrs. Gierbolini as a result of the termination in 1992. The check voucher of the check deposited with the Bankruptcy Court clearly states that the payment to the court was related to check No. 1–801–043898, dated August 7, 1992, payable to Carmen Gierbolini. On January 12, 1993, Paulette Lavergne, Esq., also filed an unsecured, non-priority proof of claim for $100,000, on behalf of Banco Popular, against the bankruptcy estate for unliquidated damages or "defalcation" of defendant's funds. On February 24, 1993, the bank deposited the $95,387.22 deferred compensation with the Clerk of the Bankruptcy Court, subject only to the bank's proof of claim.

The plaintiffs contend that the information return on Puerto Rico Department of Treasury Form 480.6 is defamatory because the monies were actually deposited with the Bankruptcy Court in 1993 and not 1992. Plaintiffs also claim that the proof of claim for unliquidated damages or "defalcation" is defamatory and has damaged the reputation of Mrs. Gierbolini such that she and the rest of her family have been the subject of derisive remarks by neighbors, acquaintances, sive remarks by neighbors, acquaintances, anonymous callers, and classmates. She claims that this approbation has left her "psychologically unwilling and unable to obtain employment." She estimates her damages at no less than $3,000,000.

Rubén Oscar Gierbolini also claims to have suffered mental and physical damages in the amount of $1,000,000 as a consequence of the ill-repute allegedly cast upon the family by the bank's filing of the information return with the Puerto Rico Treasury and the proof of claim with the Bankruptcy Court. Likewise, Oscar, Carmen Nidia's eldest child, was allegedly so distressed by this turn of events that he had to leave college and divorce his wife. The other children, allegedly subject to the derisive comments of classmates, claim to have experienced severe mental anguish. Ricardo José, for example, claims to have been so troubled by these derisive comments that he had to drop out of high school. Each of the children estimate their damages at $25,000.

## II.

### *Applicable Law*

#### A. *Information Returns*

The Puerto Rico Tax Code requires that certain payments to individuals or corporations in excess of $500 be reported in full compliance with applicable regulation by information return to the Department of Treasury, on Form 480.6, before February 28 of the subsequent year. 13 L.P.R.A. § 3147 (1976 & Supp.1995). The regulation approved by the Secretary of Treasury clearly states when an amount is deemed paid in order to require the filing of the information return. Puerto Rico Treas.Reg. § 3147–1(d), Puerto Rico (CCH) ¶ 13–503 (1993), states as follows:

> (d) For the purposes of a return of information, an amount is deemed to have been paid when it is credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and which is made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition.

*Id.; See* similar disposition in 26 C.F.R. § 1.6041-1(d) and the Internal Revenue Code, 26 U.S.C. § 6041.

In turn, Puerto Rico Treas.Reg. § 3147-2(a), Puerto Rico (CCH) ¶ 13–503 (1993), provides as follows:

> (b) Amounts distributed or made available in any calendar year under an employees' trust governed by the provisions of sec. 165, or under an annuity plan to which art. 22(b)(2)–5 relates, to a beneficiary shall be reported to the extent such amounts are includible in the gross income of such beneficiary where the amounts so includible are $500 or more.

The purpose of information returns is to help the government locate and check upon recipients of income and amounts they receive. *United States v. Haimowitz,* 404 F.2d 38 (2d Cir.1968). The information return creates no tax obligations on the part of the taxpayer beyond what the taxpayer's particular tax status in a given year requires him to pay. The persons or entities making payments have no discretion, and should not evaluate the taxpayer's tax obligation. Their only duty is to report, leaving it to the government and the taxpayer to sort out their differences as to the taxable status of any income in any particular tax year.

## B. *Consignment*

Lastly, we note that, regarding the effect of court consignment on Section 3147 reporting obligations, we must look, not only to the tax code, but also to the consignment and payment provisions of the Civil Code of Puerto Rico. In this jurisdiction, when a payor faces the quandary of having a monetary claim adverse to a payee, one way of both satisfying the payee's claim and protecting the payor's claim to payment is to deposit the payee's monies in court. The consign-

ment serves the purpose of discharging the payment obligation. Sections 1130 to 1135 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 3180–3182.

## C. *Proof of Claim in Bankruptcy*

Section 501 of Title 11, U.S.Code, permits a creditor to file a proof of claim to state a legal interest in a bankruptcy estate prior to distribution or administration. 11 U.S.C. § 501 (1988). The proof of claim procedure compels a creditor to participate in the bankruptcy distribution or forfeit its claim. *In re Diez,* 45 B.R. 137 (Bankr.S.D.Fla.1984). A formal proof of claim must be filed with the court and, though less detailed than an ordinary civil pleading, has the characteristics of an ordinary pleading for disposition of a legal claim. *See generally* Fed.R.Civ.P. 8(a). Of course, the basis for the claim must be clearly stated. Fed.R.Bankr.P. 3001(a) and Official Form 10.

## D. *Puerto Rico Law on Defamation*

Puerto Rico permits parallel actions for defamation under the Libel and Slander Act of 1902, 32 L.P.R.A. §§ 3141–3149 (1990), and Section 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. Puerto Rico has codified the basic features of the Anglo–Saxon common law governing claims of defamation with the Libel and Slander Act of 1902 (the Act). The codification includes the qualified common law privilege for communications made under an official duty or in the course of a judicial proceeding.[1] The Act also follows the common law distinction between libel *per se* and libel *per quod,* requiring, in the case of libel *per quod,* proof of *innuendo* and *colloquium. Rivera v. Martínez,* 26 P.R.R. 692 (1918). Where the defendant has made statements libelous *per se,* plaintiff need present no proof of reputation-

---

1. 32 L.P.R.A. § 3144. Section 4 of the Act states that

[a] publication or communication shall not be held or deemed malicious when made in any legislative or judicial proceeding or in any other proceeding authorized by law. A publication or communication shall not be presumed to be malicious when made:

First. In the proper discharge of an official duty.

Second. In a fair and true report of a judicial, legislative, official or other proceedings, or of anything said in the course thereof.

Third. To a Commonwealth official upon probable cause with the intention of serving the public interest or of securing the redress of a private wrong.

*Id.*

al damage more than that defendant published the libelous writing to another. *Bosch v. El Imparcial,* 87 P.R.R. 269, 284 (1963).

 Plaintiffs are at pains to explain, however, that they bring their action, not under the Libel and Slander Act of 1902, but under Section 1802 of the Civil Code, which authorizes a parallel suit for negligently inflicted injury. The Supreme Court of Puerto Rico has, indeed, recognized a cause of action under Section 1802, under principles of negligence, for damages suffered by those affected by defamatory communications. The modern development of Puerto Rico law on libel and slander has been under the Civil Code and not under the libel and slander statutes. *Sociedad v. El Vocero,* 94 J.T.S. 13 (1994). *See also Héctor Pagés v. Manuel Feingold,* 928 F.Supp. 148, (D.P.R.1996). This type of action in negligence covers damages for mental suffering experienced by the person of whom the defamatory remarks were made, as well as those of family members collaterally affected and who had no remedy under the Libel and Slander Statute of 1902. *El Vocero,* 94 J.T.S. 13, at 11503–05, *citing Torres Silva v. El Mundo,* 106 P.R.R. 581 (1977) (Official Translations); *Colón v. Romero Barceló,* 112 P.R.R. 718 (1982) (Official Translations). And, though it arises under Section 1802 of the Civil Code, defendant may claim the traditional defense of privilege as it might under the Libel and Slander Act of 1902. These are traditional defenses that have always been available. *El Vocero,* 94 J.T.S. 13, at 11506. Where the defendant claims a privilege that appears on the face of the communication, such as the absolute privilege to report judicial proceedings, the court may resolve the case as a matter of law.[2]

 The basic elements of a Section 1802 action for defamation do not differ from those of a general negligence action under Section 1802 of the Civil Code. Plaintiff must show that defendant's wrongful or negligent actions actually and proximately

caused plaintiff certain and quantifiable damages. *El Vocero,* 94 J.T.S. 13, at 11505–06; *Pagés v. Feingold,* 928 F.Supp. 148 (D.P.R. 1996). To the extent special issues arise under this general tort rubric, we address them in our factual analysis below.

 Finally, we note that actions under the Libel and Slander Act and under Section 1802 may exist in tandem with actions under Puerto Rico's so-called "Law 80," which provides a remedy for those dismissed without "just cause" from otherwise continuing employment. *Rodríguez v. Pueblo Int'l, Inc.,* 94 J.T.S. 37 (1994); *Porto v. Bentley de Puerto Rico,* 92 J.T.S. 175 (1992); *See generally,* 29 L.P.R.A. § 185a & b (1985); *see also In re Palmas del Mar,* 932 F.Supp. 36 (D.P.R. 1996). Nonetheless, Mrs. Gierbolini explains that she does not base her claim on Law 80. She and her family base their claims exclusively on the right of action provided by Section 1802; accordingly, we analyze the two allegedly libelous statements exclusively under the general tort law of Puerto Rico, bearing in mind that defendant has asserted that its communications were privileged and has challenged the sufficiency of the evidence to support a causal nexus between the filing of the information return and the proof of claim with the claimed damages.

### III.

### *Analysis*

#### A. *Defamation*

 Plaintiffs claim that the information return and proof of claim contain statements that are defamatory in nature. An allegation of defalcation, such as that included in the proof of claim, does, obviously, tend to malign the character of the party against whom the allegation is made. An information return showing payment, on the other hand, does not. As we have explained, the payor's obligation to file an information return to report payment, though generally intended

---

2. *Bosch v. El Imparcial, Inc.,* 87 P.R.R. at 289. The court explains that,
 [u]nless the privilege is apparent on the face of the complaint, as for example when the complaint alleges that libel consists in the fair and true publication of a judicial proceeding, in which case a motion to dismiss should not be granted, the rule is that the defense of privilege cannot be pleaded by way of motion to dismiss or by demurrer.
 *Id.*

to coincide with the payee's obligation to report sums paid, does not, itself, create a tax obligation in the payee; thus, Banco Popular's allegedly erroneous return (reporting for taxable year 1992 what plaintiff intimates was reportable in 1993) does not create an inference of payee wrongdoing. Because the information return is not defamatory on its face and does not lend itself to defamatory innuendo, we conclude that plaintiffs have failed to prove the information return defamatory.

### B. *Privilege*

■■■■■ Though, for purposes of this analysis, we assume the bank's information return and proof of claim to have been erroneous, Banco Popular successfully raises a colorable claim that the information return and the proof of claim fell within the first and third provisos, respectively, of the privileges codified in 32 L.P.R.A. § 3144. *See* n. 1, *supra.* Once a colorable claim of privilege has been raised, the burden shifts to the plaintiff to show that the defendant has abused the privilege. *López de Tord & Zayas Pizarro v. Molina,* 38 P.R.R. 737, 751–52 (1928); *Franco v. Martínez,* 29 P.R.R. 221, 224 (1921). Plaintiffs have failed to satisfy their burden.

■■■■ We find no evidence to suggest an abuse of privilege either in filing the information return or the proof of claim. Even were we to agree that the bank erroneously made its report to the Department of Treasury, the complexity and ambiguity of the governing statutory and regulatory language and official Treasury forms dispel any reasonable inference of deliberate falsification. While the regulations explain that money is deemed paid for purposes of Section 3147 when "available to the payee without substantial limitation or restriction as to the time and manner of payment or condition upon which payment is to be made," the regulations do

not explain whether or not money payable upon termination of employment (1992) or money disgorged but consigned to the court (1993) or otherwise held in trust is "substantially" limited or conditioned.[3] As we have already noted, matters are further complicated by the fact that, under the Civil Code of Puerto Rico, consignment generally discharges a duty of payment. Thus, though we are aware that these precise issues have not been fully addressed by Puerto Rico case law, we do know that the complexity of the question dispels the specter of maliciousness by which the defendant's privilege might have been lost.

■■■■ Likewise, we find no evidence to support the claim that Banco Popular filed its proof of claim in derogation of the privilege for redress of a private wrong. Plaintiffs point to nothing by which the court may infer that the bank lacked a good faith basis to assert that Mrs. Gierbolini owed $100,000 either as unliquidated damages or for defalcation. Of course, we can infer no more of bad faith from the absence of criminal charges against Mrs. Gierbolini for larceny or embezzlement than we can from the absence of criminal charges against the bank for reporting violations. And, had it been the bank's intention to defame Mrs. Gierbolini, we doubt that the bank would have included unliquidated damages as an alternative basis for its proof of claim. More likely, the bank merely framed its proof of claim to reflect the fact that it had reason to believe that, in her position as Platform Officer, Mrs. Gierbolini knew or should have known that money was being illegally taken from customer accounts. Thus, we conclude that the plaintiffs have failed to penetrate the privileges that protect the information report and proof of claim.

### C. *Causation and Damages*

■■■■■■ In addition to its other successful defenses, defendant also correctly asserts

---

**3.** Upon separation from employment, effective July 13, 1992, Mrs. Gierbolini became eligible to receive her profit-sharing earnings from Banco Popular in the amount of $95,387.22. The bank drafted a check to cover these earnings on August 7, 1992. The original check is identified as Check No. 1–801–043898. On or about September 2, 1992, the Gierbolinis filed a bankruptcy petition. Having withheld the original check that it had drafted, Banco Popular issued a new check which it deposited on or about February 24, 1993, with the Clerk of the Bankruptcy Court, to protect a proof of claim it had previously filed on or about January 12, 1993, for $100,-000.

that plaintiffs have offered less than a scintilla of evidence to support their claims of causation between the two negligent (defamatory) acts and the claimed damages. The plaintiffs have utterly failed to show any damage traceable to the bank's report to the Department of Treasury. This record does not show that plaintiffs ever faced a tax audit, tax evasion charges or public disapprobation as a result of the filing of the information return with the Department of Treasury. Plaintiffs allege mental suffering arising from ill-repute cast upon the family, but the ill-repute, as articulated, appears to arise from the fact that Mrs. Gierbolini lost her job at Banco Popular, along with several cashiers, in the context of the small community of Coamo, Puerto Rico. There is no evidence that the filing of the proof of claim was published in a newspaper or was read by or circulated within the Coamo community. This proof of claim appears to have remained silently filed in the Bankruptcy Court subject to final adjudication.

 Moreover, plaintiffs have offered no evidence to substantiate the nature or degree of their alleged suffering. Plaintiffs argue that they need not prove damages when the defamatory statement is libelous *per se.* Had they sought relief for the type of reputational injury covered by the Libel and Slander Act of 1902, we would agree that plaintiffs need not prove damages when the defamatory statement pertains to the plaintiff's occupation or charges a crime. *Bosch v. El Imparcial,* 87 P.R.R. 269, 284–87 (1963), *citing People v. Prensa Insular,* 69 P.R.R. 636 (1949); *Rivera v. Martínez,* 26 P.R.R. 692 (1918). Like the Anglo–Saxon common law from which it is borrowed, we presume the Act makes this exception to the usual rule that plaintiffs prove their damages because (1) the nature of a statement held libelous *per se* creates a strong likelihood that the plaintiff actually suffered reputational injury, (2) the court would otherwise suffer itself to the oftentimes unseemly evidence that plaintiff had no reputation to damage, and (3) the difficulty of showing and valuing reputational damage proved unreasonably burdensome for plaintiffs and uncomfortably speculative for the courts. *See generally,* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 112, at 788–97 (5th ed. 1984).

 None of these justifications for exception from the general rule requiring proof of damages exists when, as it does here, the claim arises under Section 1802. The tort action permitted by the Supreme Court of Puerto Rico under Section 1802 covers damages only recoverable under principles of negligence and causal connection to the damage caused. *El Vocero,* 94 J.T.S. 13, at 11502–03. Special damages do not follow libelous statements with predictability, nor do they require the court to delve into ambiguous and difficult matters of reputation or character; thus, as we have explained, and as is the case with any other general tort claim, the court may reasonably expect a plaintiff to prove that the defendant's wrongful or negligent actions proximately caused plaintiff certain and quantifiable damages. *Id.,* at 11505–06.

Plaintiffs might have proven mental suffering with records of psychiatric treatment or counseling and the affidavits of experts and witnesses. This evidence might also have established the causal link between the defamatory statements and unemployment, divorce, or academic failure. Moreover, evidence of medical treatment and earning expectancy would enable the court to quantify the damage plaintiffs allege to have suffered, at least for jurisdictional purposes. 28 U.S.C. § 1332. Without more than plaintiffs' self-serving, conclusory allegations to support the existence, causation, or amount of collateral damage, we will not suffer the defendant to the cost of trial or the burden of compensating plaintiffs for what may well be plaintiffs' personal failures and the failures of the general society in which plaintiffs live.

## IV.

### *Conclusion*

Plaintiffs have failed to defeat the applicable privileges that protect defendant's written communications with the Department of Treasury and the Bankruptcy Court. They have also failed to adduce even a scintilla of

evidence to support the causal connection between the discrete defamatory acts and the claims of damage, much less the damages alleged. In the case of defendant's information return, plaintiffs have failed even to show that the writing is defamatory. Accordingly, we grant summary judgment in favor of the defendant.

Judgment shall be entered dismissing the complaint.

**IT IS SO ORDERED.**