[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT



No. 96-1997

RUBEN O. GIERBOLINI-ROSA, ET AL.,

Plaintiffs, Appellants,

v.

BANCO POPULAR DE PUERTO RICO,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fuste, U.S. District Judge]



Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge, 

and Lagueux, District Judge.


Benny Frankie Cerezo for appellants.
Jay  A.  Garcia-Gregory, with whom Ricardo  L.  Ortiz and Fiddler,
Gonzalez & Rodriguez were on brief for appellee. 



August 18, 1997


Of the District of Rhode Island, sitting by designation.

CAMPBELL,  Senior Circuit Judge . This civil action is

a related, non-core proceeding under 28 U.S.C. S 1334(b).

Plaintiffs-appellants Ruben O. Gierbolini-Rosa, Carmen Nidia

Gierbolini-Marrero, and their four children, Ruben Oscar

Gierbolini-Gierbolini, Carlos Ruben Gierbolini-Gierbolini,

Ricardo Jose Gierbolini-Gierbolini, and Nirin Mirnel

Gierbolini-Gierbolini, (collectively referred to as the

"Gierbolinis" or the "appellants") brought suit against Banco

Popular de Puerto Rico ("BPPR") under Puerto Rico's General

Tort Statute, Article 1802 of the Puerto Rico Civil Code, see

31 L.P.R.A. S 5141 (1991), for damages allegedly caused by

defamatory statements made to the Puerto Rico Treasury

Department and the United States Bankruptcy Court. A year

later, BPPR filed its "Motion Requesting Entry of Summary

Judgment Dismissing the Complaint." The United States District

Court for the District of Puerto Rico issued an Opinion and

Order, published as  Gierbolini Rosa v. Banco Popular de Puerto

1. Section 1334(b) provides as follows:
"(b) Notwithstanding any Act of Congress that confers
exclusive jurisdiction on a court or courts other than the
district courts, the district courts shall have original but
not exclusive jurisdiction of all civil proceedings arising
under title 11, or arising in or related to cases under title
11."
28 U.S.C. S 1334(b) (West 1993). 

2. Section 5141 states, in relevant part, as follows:
"A person who by an act or omission causes damage to
another through fault or negligence shall be obliged to repair
the damage so done."
31 L.P.R.A. S 5141 (1991). 

-2- 2

Rico, 930 F. Supp. 712 (D.P.R. 1996), and separate judgment on

June 28, 1996, dismissing the complaint. The court later

entered an amended judgment in compliance with Fed. R. Civ. P.

54(b), stating that there was no just reason for further delay

and that it was in the interest of justice that the judgment

entered on June 28, 1996, be treated as a final judgment for

purposes of appeal.

"We review the district court's grant of summary

judgment de novo, and will uphold that determination if the

record, viewed in the light most favorable to the nonmoving

party, shows that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a

matter of law." Daniels-Recio v. Hospital del Maestro, Inc.,

109 F.3d 88, 92 (1st Cir. 1997) (citations omitted) (internal

quotation marks omitted). Having carefully considered the

arguments, the briefs and the record, we affirm the judgment of

the district court for substantially the same reasons set out

in its Opinion and Order, adding the following.

1. Appellants argue that the district court erred in

applying the common law privilege codified in Section 4 of the

Libel and Slander Act of 1902,  see 32 L.P.R.A. S 3144 (1968),

3. Section 4 of the Libel and Slander Act of 1902 provides as
follows:
"A publication or communication shall not be held or
deemed malicious when made in any legislative or judicial
proceeding or in any other proceeding authorized by law. A
publication or communication shall not be presumed to be
malicious when made:

-3- 3

to their defamation action brought under the provisions of

Puerto Rico's General Tort Statute, Article 1802 of the Puerto

Rico Civil Code, see note 2, supra.

For this contention, appellants rely mainly upon

Romany v.  El Mundo, Inc. , 89 P.R.R. 592 (1963), and  Ojeda Ojeda

v.  El Vocero, Inc. , 94 J.T.S. 131 (1994). However, these cases

do not hold that an action for defamation brought under Article

1802 may not be subject to essentially the same privilege

codified in the Libel and Slander Act of 1902. Rather, they

merely indicate that a libel and slander action brought

pursuant to the Libel and Slander Act of 1902 and a defamation

action brought under Article 1802 of the Puerto Rico Civil Code

are separate and independent causes of action with distinct

elements.

Citing the Puerto Rico Supreme Court's opinion in

Rodriguez v.  El Vocero, Inc. , 94 J.T.S. 13 (1994), the district

court construed Puerto Rico law as maintaining that, "though

[the action] arises under Section [sic] 1802 of the Civil Code,

defendant may claim the traditional defense of privilege as it

might under the Libel and Slander Act of 1902", that being a

First. In the proper discharge of an official duty.
Second. In a fair and true report of a judicial,
legislative, official or other proceeding, or of anything said
in the course thereof.
Third. To a Commonwealth official upon probable cause
with the intention of serving the public interest or of
securing the redress of a private wrong."
32 L.P.R.A. S 3144 (1968).

-4- 4

"traditional defense[] that ha[s] always been available."

Gierbolini  Rosa, 930 F. Supp. at 717. We agree with the

court's interpretation, which is supported in two other

decisions of the Supreme Court of Puerto Rico, namely,  Porto v.

Bentley  Puerto  Rico,  Inc., 92 J.T.S. 175 (1992), and Jimenez

Alvarez v. Silen Maldonado, 92 J.T.S. 95 (1992).

In Porto, a former employee, Ivan Porto, and his

wife, personally and on behalf of the conjugal partnership and

their minor children, sued the company, claiming damages for

"allegedly false, slanderous and libelous accusations" made

against him at the time of his discharge. Porto, P.R. Offic.

Trans. (majority opinion) at 2-3. He alleged that, in a letter

of discharge, he was falsely accused of having unlawfully

appropriated the official company vehicle. Id. (majority

opinion) at 3. Porto's action rested upon Article 1802 of the

Puerto Rico Civil Code, as both parties to the suit were

"private persons." Id. (majority opinion) at 6; see also id.

(concurring opinion) at 1. The Supreme Court of Puerto Rico

explained: "[i]n our jurisdiction the liability rule based on

negligence [governs] all libel tort suits brought by private

persons." Id. (majority opinion) at 8 (citations omitted);  see

also id. (concurring opinion) at 2. Nevertheless, the Porto

Court made reference to the common law privileges codified in

Sections 4 and 5 of the Libel and Slander Act of 1902, and

applied "the qualified privilege for promoting the free flow of

-5- 5

communication between employer and employee" to defeat the

cause of action for defamation. Id. (majority opinion) at 16-

21; see also 32 L.P.R.A. S 3145 (1968).

Even more in point is the Puerto Rico Supreme Court's

decision in Jimenez  Alvarez, where one of the defendants,

Baldomero Roig Velez, appealed from a partial judgment that

dismissed his counterclaim for damages allegedly caused by

certain defamatory, false and libelous allegations negligently

made in the plaintiff's verified complaint. Jimenez Alvarez,

P.R. Offic. Trans. at 1. Writing for the Supreme Court of

Puerto Rico, Justice Naveira de Rodon framed the issue

presented for review as one of defamation, identifying the

three sources of a defamation claim in Puerto Rico: (1) the

Constitution of the Commonwealth of Puerto Rico, (2) the Libel

and Slander Act of 1902, and (3) Article 1802 of the Puerto

Rico Civil Code. Id. at 3-4. Nonetheless, Justice Naveira de

4. Section 5 of the Libel and Slander Act of 1902 states as
follows:
"Malice shall be presumed to exist in any injurious
communication or writing made without justifiable motive and
addressed to any person other than to a relative within the
third degree, or to a person whom the author has under his
guardianship or  when said communication passes between persons
having business in partnership, or other similar association ."
32 L.P.R.A. S 3145 (1968) (emphasis added).

5. Article II, Section 8 of the Constitution of the
Commonwealth of Puerto Rico provides as follows:
"Every person has the right to the protection of law
against abusive attacks on his honor, reputation and private or
family life."
P.R. Const. art. II, S 8.

-6- 6

Rodon noted that the common-law privilege generally applicable

to judicial proceedings "covers anything that may be said with

regard to the controversy, whether it be in the pleadings, in

affidavits, or in open court." Id. at 4 (citation omitted)

(emphasis added). In Puerto Rico, Justice Naveira de Rodon

continued, Section 4 of the Libel and Slander Act of 1902

recognizes a similar kind of privilege, and, for purposes of

that privilege, a complaint shall be deemed to be "'[a]

publication or communication . . . made in [a] . . . judicial

proceeding.'" Id. at 5; see also 32 L.P.R.A. S 3144 (1968).

The court concluded that the common law privilege codified in

Section 4 of the Libel and Slander Act of 1902, regarding

communications in a legislative, judicial or any other

proceeding authorized by law, barred the tort action for

defamation raised in Roig Velez's counterclaim. Id. at 5, 7.

We, therefore, agree with the district court that the

privilege applies in the instant case to immunize BPPR's

conduct in filing the informative return before the Puerto Rico

Treasury Department and the proof of claim before the United

States Bankruptcy Court. The informative return, which BPPR,

as payor, had a legal obligation to file with the Puerto Rico

Treasury Department, qualifies as "[a] publication or

communication . . . made . . . in [a] . . . proceeding

authorized by law." 32 L.P.R.A. S 3144 (1968); see also

Gierbolini  Rosa, 930 F. Supp. at 715-16. The proof of claim

-7- 7

is, as the district court pointed out, in the nature of an

ordinary civil pleading, and thus forms part of a "judicial

proceeding." 32 L.P.R.A. S 3144 (1968); see also Gierbolini

Rosa, 930 F. Supp. at 716. More specifically, the informative

return and the proof of claim fall, as the district court

found, within the scope of Section 4's first and third

provisos, respectively. See 32 L.P.R.A. S 3144 (1968);

Gierbolini  Rosa, 930 F. Supp. at 718. We need not decide

whether the privilege is an absolute or a qualified privilege

because, even if it is only qualified, there is no evidence of

malice or bad faith on the part of BPPR that would defeat the

claim of privilege in this case. See Gierbolini Rosa, 930 F.

Supp. at 718.

2. Appellants assert that the district court erred in

finding that they had offered insufficient evidence to

establish a causal nexus between the alleged defamatory conduct

and the claimed mental and moral suffering. The appellants

further insist that the district court erred in determining

that they had presented insufficient evidence to substantiate

the nature and the degree of their alleged damages. The three

basic elements of a cause of action under Article 1802 of the

Puerto Rico Civil Code are as follows: (1) a guilty or

negligent act or omission, (2) a causal link between the act or

omission and the damages, and (3) damages. 31 L.P.R.A. S 5141

(1991); see also Gierbolini  Rosa, 930 F. Supp. at 717

-8- 8

("Plaintiff must show that defendant's wrongful or negligent

actions actually and proximately caused plaintiff certain and

quantifiable damages." (citations omitted)); Rodriguez, P.R.

Offic. Trans. at 7; Ojeda  Ojeda, P.R. Offic. Trans. at 2, 5.

Even assuming arguendo that BPPR's conduct was negligent and

defamatory in the instant case, we nonetheless agree with the

district court that there was insufficient proof of causation

and damages for the complaint to withstand a summary judgment

challenge. See Gierbolini Rosa, 930 F. Supp. at 718-19.

The appellants contend that the district court's

determination on this point is at odds with the position the

same judge took in  Pages v.  Feingold, 928 F. Supp. 148 (D.P.R.

1996). The two cases are, however, distinguishable. In Pages,

there was an unmistakable causal connection between Feingold's

defamatory conduct and Pages' reputational damage. No such

connection exists in the case at hand between BPPR's filing of

the informative return and proof of claim and the Gierbolinis'

alleged mental and moral suffering. See Gierbolini Rosa, 930

F. Supp. at 718-19. And, unlike Pages, where not only mental

and moral, but also financial and reputational damages were

established, the evidence presented here in support of damages

did not go beyond the most conclusory allegations. See  id. at

719.

3. Finally, the appellants contend that the district

court erred in failing to consider the affidavit of attorney

-9- 9

William Pagan submitted in support of "Plaintiffs' Opposition

to Defendant's Motion Requesting Entry of Summary Judgment

Dismissing the Complaint and for Order Requiring Defendant to

Pay Attorney's Fees and Costs." The appellants maintain that

this affidavit contained facts indicating the publication or

communication of an additional defamatory statement outside the

confines of a privileged legislative, judicial or other

proceeding authorized by law.

The Gierbolinis accompanied their opposition to

BPPR's motion for summary judgment with a "Statement of

Material Facts as to Which There Exists a Genuine Issue to be

Tried." In the statement, the Gierbolinis asserted, for the

first time, that BPPR's "false and public accusations were not

exclusively made through the Proof of Claim and [a related

motion]" filed with the United States Bankruptcy Court, and

that BPPR, through employees at the Coamo branch, "slandered

and destroyed Carmen Gierbolini's reputation." The Pagan

affidavit was cited as supporting these assertions. In that

affidavit, the affiant stated that a BPPR auditor informed him

that Gierbolini-Marrero had been under investigation and would

possibly be charged with fraud and defalcation.

6. The Pagan affidavit provides, in pertinent part, as
follows:
"2. That sometime during the month of July 1992 Gilberto
Canales an Auditor for Banco Popular de Puerto Rico informed me
that Carmen N. Gierbolini had been the subject of an
investigation and would posibly [sic] be accused of fraud and
defalcation."

-10- 10

We do not believe that the district court was

required to consider the new incident mentioned in the Pagan

affidavit for purposes of determining BPPR's motion for summary

judgment. The conduct which the complaint alleges in paragraph

12 to be "tortious, wrongful, negligent and culpable" under

Article 1802 of the Puerto Rico Civil Code is set out in

paragraphs 9, 10 and 11 of the complaint. These describe

BPPR's filing of the informative return before the Puerto Rico

Treasury Department and the proof of claim and a related motion

before the United States Bankruptcy Court. No mention is made

of a claim of slander based on a statement by a BPPR auditor.

The Gierbolinis' "Answer to Interrogatories"

reaffirmed that they based their charges of defamation on

BPPR's filing of the informative return, the proof of claim and

a related motion. In their answers to Interrogatory No. 17,

addressed to Gierbolini-Marrero, and Interrogatory No. 11,

addressed to Gierbolini-Rosa, both Gierbolini-Marrero and

Gierbolini-Rosa identify BPPR's proof of claim and a related

motion as the basis for their allegation in paragraph 12 of the

complaint. The only other answers that identify any

7. Interrogatories No. 17 and No. 11 provide, in pertinent
part, as follows:
"State the basis for your allegation in paragraph 12 of
the Complaint that BPPR 'falsely and publicly' accused you of
'embezzlement and defalcation'."

Gierbolini-Marrero's answer to Interrogatory No. 17
states:

-11- 11

defamatory conduct on the part of BPPR are those responding to

Interrogatory No. 15, served on Gierbolini-Marrero, and

Interrogatory No. 9, served on Gierbolini-Rosa, regarding the

alleged falsity of the informative return filed with the Puerto

Rico Treasury Department.

Neither the complaint, nor the interrogatory answers,

nor, for that matter, the "Preliminary Pretrial Order", mention

"Proof of claim filed by BPPR on January 12, 1993 and
Motion filed by BPPR on March 8, 1993 both in B-92-05458."

Gierbolini-Rosa's answer to Interrogatory No. 11 states:
"Proof of claim filed by the BPPR on January 12, 1993 and
Motion field [sic] by BPPR on March 8, 1993, both in the
bankruptcy proceeding."

8. Interrogatories No. 15 and No. 9 provide, in pertinent
part, as follows:
"State the basis for your allegation in paragraph 9 of the
Complaint that the report filed by BPPR with the Treasury
Department was false and, specifically, was filed with the
malicious intent to harass plaintiffs."

Gierbolini-Marrero's answer to Interrogatory No. 15
states:
"BPPR filed form 480.6 (Informative Return) with the
Treasury Department reporting having paid me the amount of
$95,387.22 during 1992 as deferred compensation. BPPR knew
that that was false. The obvious intention was to provoke a
tax investigation of our return by the Treasury Department
since I could not have reported that income in my 1992 tax
return because I never received the payment."

Gierbolini-Rosa's answer to Interrogatory No. 9 states:

"BPPR filed form 480.6 Informative Return with the
Treasury Department reporting having paid my wife the amount of
$95,387.22 during 1992 as deferred compensation. BPPR knew
that the report was false. The obvious intention was to
provoke a tax investigation of our return by the Treasury
Department since we could not have reported that income in our
1992 return because my wife never received such payment."

-12- 12

any other allegedly defamatory acts. There is no allegation or

assertion of fact in any of these documents indicating that one

of the acts for which recovery is sought consists of a BPPR

auditor telling someone in the community of Coamo that

Gierbolini-Marrero had been under investigation and would

possibly be charged with fraud and defalcation. The appellants

contend that that incident was only discovered afterwards, at

which time it was promptly brought to the district court's

attention through the Pagan affidavit. Appellants, however,

did not move to amend their complaint to charge this alleged

conduct as an additional defamatory act by BPPR. The district

court and BPPR were not required to shoot at a moving target.

They were entitled to proceed on the assumption that the

defamation action rested on the claims in plaintiffs' complaint

as confirmed in their sworn answers to interrogatories.

Affirmed.

-13- 13