USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1997 RUBEN O. GIERBOLINI-ROSA, ET AL., Plaintiffs, Appellants, v. BANCO POPULAR DE PUERTO RICO, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ____________________ Before Selya, Circuit Judge, Campbell, Senior Circuit Judge,  and Lagueux, District Judge. ____________________ Benny Frankie Cerezo for appellants. Jay  A.  Garcia-Gregory, with whom Ricardo  L.  Ortiz and Fiddler, Gonzalez & Rodriguez were on brief for appellee.  ____________________ August 18, 1997 ____________________  Of the District of Rhode Island, sitting by designation. CAMPBELL,  Senior Circuit Judge . This civil action is a related, non-core proceeding under 28 U.S.C. S 1334(b). Plaintiffs-appellants Ruben O. Gierbolini-Rosa, Carmen Nidia Gierbolini-Marrero, and their four children, Ruben Oscar Gierbolini-Gierbolini, Carlos Ruben Gierbolini-Gierbolini, Ricardo Jose Gierbolini-Gierbolini, and Nirin Mirnel Gierbolini-Gierbolini, (collectively referred to as the "Gierbolinis" or the "appellants") brought suit against Banco Popular de Puerto Rico ("BPPR") under Puerto Rico's General Tort Statute, Article 1802 of the Puerto Rico Civil Code, see 31 L.P.R.A. S 5141 (1991), for damages allegedly caused by defamatory statements made to the Puerto Rico Treasury Department and the United States Bankruptcy Court. A year later, BPPR filed its "Motion Requesting Entry of Summary Judgment Dismissing the Complaint." The United States District Court for the District of Puerto Rico issued an Opinion and Order, published as  Gierbolini Rosa v. Banco Popular de Puerto  1. Section 1334(b) provides as follows: "(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. S 1334(b) (West 1993).  2. Section 5141 states, in relevant part, as follows: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. S 5141 (1991).  -2- 2 Rico, 930 F. Supp. 712 (D.P.R. 1996), and separate judgment on June 28, 1996, dismissing the complaint. The court later entered an amended judgment in compliance with Fed. R. Civ. P. 54(b), stating that there was no just reason for further delay and that it was in the interest of justice that the judgment entered on June 28, 1996, be treated as a final judgment for purposes of appeal. "We review the district court's grant of summary judgment de novo, and will uphold that determination if the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Daniels-Recio v. Hospital del Maestro, Inc., 109 F.3d 88, 92 (1st Cir. 1997) (citations omitted) (internal quotation marks omitted). Having carefully considered the arguments, the briefs and the record, we affirm the judgment of the district court for substantially the same reasons set out in its Opinion and Order, adding the following. 1. Appellants argue that the district court erred in applying the common law privilege codified in Section 4 of the Libel and Slander Act of 1902,  see 32 L.P.R.A. S 3144 (1968),  3. Section 4 of the Libel and Slander Act of 1902 provides as follows: "A publication or communication shall not be held or deemed malicious when made in any legislative or judicial proceeding or in any other proceeding authorized by law. A publication or communication shall not be presumed to be malicious when made: -3- 3 to their defamation action brought under the provisions of Puerto Rico's General Tort Statute, Article 1802 of the Puerto Rico Civil Code, see note 2, supra. For this contention, appellants rely mainly upon Romany v.  El Mundo, Inc. , 89 P.R.R. 592 (1963), and  Ojeda Ojeda v.  El Vocero, Inc. , 94 J.T.S. 131 (1994). However, these cases do not hold that an action for defamation brought under Article 1802 may not be subject to essentially the same privilege codified in the Libel and Slander Act of 1902. Rather, they merely indicate that a libel and slander action brought pursuant to the Libel and Slander Act of 1902 and a defamation action brought under Article 1802 of the Puerto Rico Civil Code are separate and independent causes of action with distinct elements. Citing the Puerto Rico Supreme Court's opinion in Rodriguez v.  El Vocero, Inc. , 94 J.T.S. 13 (1994), the district court construed Puerto Rico law as maintaining that, "though [the action] arises under Section [sic] 1802 of the Civil Code, defendant may claim the traditional defense of privilege as it might under the Libel and Slander Act of 1902", that being a  First. In the proper discharge of an official duty. Second. In a fair and true report of a judicial, legislative, official or other proceeding, or of anything said in the course thereof. Third. To a Commonwealth official upon probable cause with the intention of serving the public interest or of securing the redress of a private wrong." 32 L.P.R.A. S 3144 (1968). -4- 4 "traditional defense[] that ha[s] always been available." Gierbolini  Rosa, 930 F. Supp. at 717. We agree with the court's interpretation, which is supported in two other decisions of the Supreme Court of Puerto Rico, namely,  Porto v. Bentley  Puerto  Rico,  Inc., 92 J.T.S. 175 (1992), and Jimenez Alvarez v. Silen Maldonado, 92 J.T.S. 95 (1992). In Porto, a former employee, Ivan Porto, and his wife, personally and on behalf of the conjugal partnership and their minor children, sued the company, claiming damages for "allegedly false, slanderous and libelous accusations" made against him at the time of his discharge. Porto, P.R. Offic. Trans. (majority opinion) at 2-3. He alleged that, in a letter of discharge, he was falsely accused of having unlawfully appropriated the official company vehicle. Id. (majority opinion) at 3. Porto's action rested upon Article 1802 of the Puerto Rico Civil Code, as both parties to the suit were "private persons." Id. (majority opinion) at 6; see also id. (concurring opinion) at 1. The Supreme Court of Puerto Rico explained: "[i]n our jurisdiction the liability rule based on negligence [governs] all libel tort suits brought by private persons." Id. (majority opinion) at 8 (citations omitted);  see also id. (concurring opinion) at 2. Nevertheless, the Porto Court made reference to the common law privileges codified in Sections 4 and 5 of the Libel and Slander Act of 1902, and applied "the qualified privilege for promoting the free flow of -5- 5 communication between employer and employee" to defeat the cause of action for defamation. Id. (majority opinion) at 16- 21; see also 32 L.P.R.A. S 3145 (1968). Even more in point is the Puerto Rico Supreme Court's decision in Jimenez  Alvarez, where one of the defendants, Baldomero Roig Velez, appealed from a partial judgment that dismissed his counterclaim for damages allegedly caused by certain defamatory, false and libelous allegations negligently made in the plaintiff's verified complaint. Jimenez Alvarez, P.R. Offic. Trans. at 1. Writing for the Supreme Court of Puerto Rico, Justice Naveira de Rodon framed the issue presented for review as one of defamation, identifying the three sources of a defamation claim in Puerto Rico: (1) the Constitution of the Commonwealth of Puerto Rico, (2) the Libel and Slander Act of 1902, and (3) Article 1802 of the Puerto Rico Civil Code. Id. at 3-4. Nonetheless, Justice Naveira de  4. Section 5 of the Libel and Slander Act of 1902 states as follows: "Malice shall be presumed to exist in any injurious communication or writing made without justifiable motive and addressed to any person other than to a relative within the third degree, or to a person whom the author has under his guardianship or  when said communication passes between persons having business in partnership, or other similar association ." 32 L.P.R.A. S 3145 (1968) (emphasis added). 5. Article II, Section 8 of the Constitution of the Commonwealth of Puerto Rico provides as follows: "Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life." P.R. Const. art. II, S 8. -6- 6 Rodon noted that the common-law privilege generally applicable to judicial proceedings "covers anything that may be said with regard to the controversy, whether it be in the pleadings, in affidavits, or in open court." Id. at 4 (citation omitted) (emphasis added). In Puerto Rico, Justice Naveira de Rodon continued, Section 4 of the Libel and Slander Act of 1902 recognizes a similar kind of privilege, and, for purposes of that privilege, a complaint shall be deemed to be "'[a] publication or communication . . . made in [a] . . . judicial proceeding.'" Id. at 5; see also 32 L.P.R.A. S 3144 (1968). The court concluded that the common law privilege codified in Section 4 of the Libel and Slander Act of 1902, regarding communications in a legislative, judicial or any other proceeding authorized by law, barred the tort action for defamation raised in Roig Velez's counterclaim. Id. at 5, 7. We, therefore, agree with the district court that the privilege applies in the instant case to immunize BPPR's conduct in filing the informative return before the Puerto Rico Treasury Department and the proof of claim before the United States Bankruptcy Court. The informative return, which BPPR, as payor, had a legal obligation to file with the Puerto Rico Treasury Department, qualifies as "[a] publication or communication . . . made . . . in [a] . . . proceeding authorized by law." 32 L.P.R.A. S 3144 (1968); see also Gierbolini  Rosa, 930 F. Supp. at 715-16. The proof of claim -7- 7 is, as the district court pointed out, in the nature of an ordinary civil pleading, and thus forms part of a "judicial proceeding." 32 L.P.R.A. S 3144 (1968); see also Gierbolini Rosa, 930 F. Supp. at 716. More specifically, the informative return and the proof of claim fall, as the district court found, within the scope of Section 4's first and third provisos, respectively. See 32 L.P.R.A. S 3144 (1968); Gierbolini  Rosa, 930 F. Supp. at 718. We need not decide whether the privilege is an absolute or a qualified privilege because, even if it is only qualified, there is no evidence of malice or bad faith on the part of BPPR that would defeat the claim of privilege in this case. See Gierbolini Rosa, 930 F. Supp. at 718. 2. Appellants assert that the district court erred in finding that they had offered insufficient evidence to establish a causal nexus between the alleged defamatory conduct and the claimed mental and moral suffering. The appellants further insist that the district court erred in determining that they had presented insufficient evidence to substantiate the nature and the degree of their alleged damages. The three basic elements of a cause of action under Article 1802 of the Puerto Rico Civil Code are as follows: (1) a guilty or negligent act or omission, (2) a causal link between the act or omission and the damages, and (3) damages. 31 L.P.R.A. S 5141 (1991); see also Gierbolini  Rosa, 930 F. Supp. at 717 -8- 8 ("Plaintiff must show that defendant's wrongful or negligent actions actually and proximately caused plaintiff certain and quantifiable damages." (citations omitted)); Rodriguez, P.R. Offic. Trans. at 7; Ojeda  Ojeda, P.R. Offic. Trans. at 2, 5. Even assuming arguendo that BPPR's conduct was negligent and defamatory in the instant case, we nonetheless agree with the district court that there was insufficient proof of causation and damages for the complaint to withstand a summary judgment challenge. See Gierbolini Rosa, 930 F. Supp. at 718-19. The appellants contend that the district court's determination on this point is at odds with the position the same judge took in  Pages v.  Feingold, 928 F. Supp. 148 (D.P.R. 1996). The two cases are, however, distinguishable. In Pages, there was an unmistakable causal connection between Feingold's defamatory conduct and Pages' reputational damage. No such connection exists in the case at hand between BPPR's filing of the informative return and proof of claim and the Gierbolinis' alleged mental and moral suffering. See Gierbolini Rosa, 930 F. Supp. at 718-19. And, unlike Pages, where not only mental and moral, but also financial and reputational damages were established, the evidence presented here in support of damages did not go beyond the most conclusory allegations. See  id. at 719. 3. Finally, the appellants contend that the district court erred in failing to consider the affidavit of attorney -9- 9 William Pagan submitted in support of "Plaintiffs' Opposition to Defendant's Motion Requesting Entry of Summary Judgment Dismissing the Complaint and for Order Requiring Defendant to Pay Attorney's Fees and Costs." The appellants maintain that this affidavit contained facts indicating the publication or communication of an additional defamatory statement outside the confines of a privileged legislative, judicial or other proceeding authorized by law. The Gierbolinis accompanied their opposition to BPPR's motion for summary judgment with a "Statement of Material Facts as to Which There Exists a Genuine Issue to be Tried." In the statement, the Gierbolinis asserted, for the first time, that BPPR's "false and public accusations were not exclusively made through the Proof of Claim and [a related motion]" filed with the United States Bankruptcy Court, and that BPPR, through employees at the Coamo branch, "slandered and destroyed Carmen Gierbolini's reputation." The Pagan affidavit was cited as supporting these assertions. In that affidavit, the affiant stated that a BPPR auditor informed him that Gierbolini-Marrero had been under investigation and would possibly be charged with fraud and defalcation.  6. The Pagan affidavit provides, in pertinent part, as follows: "2. That sometime during the month of July 1992 Gilberto Canales an Auditor for Banco Popular de Puerto Rico informed me that Carmen N. Gierbolini had been the subject of an investigation and would posibly [sic] be accused of fraud and defalcation." -10- 10 We do not believe that the district court was required to consider the new incident mentioned in the Pagan affidavit for purposes of determining BPPR's motion for summary judgment. The conduct which the complaint alleges in paragraph 12 to be "tortious, wrongful, negligent and culpable" under Article 1802 of the Puerto Rico Civil Code is set out in paragraphs 9, 10 and 11 of the complaint. These describe BPPR's filing of the informative return before the Puerto Rico Treasury Department and the proof of claim and a related motion before the United States Bankruptcy Court. No mention is made of a claim of slander based on a statement by a BPPR auditor. The Gierbolinis' "Answer to Interrogatories" reaffirmed that they based their charges of defamation on BPPR's filing of the informative return, the proof of claim and a related motion. In their answers to Interrogatory No. 17, addressed to Gierbolini-Marrero, and Interrogatory No. 11, addressed to Gierbolini-Rosa, both Gierbolini-Marrero and Gierbolini-Rosa identify BPPR's proof of claim and a related motion as the basis for their allegation in paragraph 12 of the complaint. The only other answers that identify any  7. Interrogatories No. 17 and No. 11 provide, in pertinent part, as follows: "State the basis for your allegation in paragraph 12 of the Complaint that BPPR 'falsely and publicly' accused you of 'embezzlement and defalcation'." Gierbolini-Marrero's answer to Interrogatory No. 17 states: -11- 11 defamatory conduct on the part of BPPR are those responding to Interrogatory No. 15, served on Gierbolini-Marrero, and Interrogatory No. 9, served on Gierbolini-Rosa, regarding the alleged falsity of the informative return filed with the Puerto Rico Treasury Department. Neither the complaint, nor the interrogatory answers, nor, for that matter, the "Preliminary Pretrial Order", mention  "Proof of claim filed by BPPR on January 12, 1993 and Motion filed by BPPR on March 8, 1993 both in B-92-05458." Gierbolini-Rosa's answer to Interrogatory No. 11 states: "Proof of claim filed by the BPPR on January 12, 1993 and Motion field [sic] by BPPR on March 8, 1993, both in the bankruptcy proceeding." 8. Interrogatories No. 15 and No. 9 provide, in pertinent part, as follows: "State the basis for your allegation in paragraph 9 of the Complaint that the report filed by BPPR with the Treasury Department was false and, specifically, was filed with the malicious intent to harass plaintiffs." Gierbolini-Marrero's answer to Interrogatory No. 15 states: "BPPR filed form 480.6 (Informative Return) with the Treasury Department reporting having paid me the amount of $95,387.22 during 1992 as deferred compensation. BPPR knew that that was false. The obvious intention was to provoke a tax investigation of our return by the Treasury Department since I could not have reported that income in my 1992 tax return because I never received the payment." Gierbolini-Rosa's answer to Interrogatory No. 9 states: "BPPR filed form 480.6 Informative Return with the Treasury Department reporting having paid my wife the amount of $95,387.22 during 1992 as deferred compensation. BPPR knew that the report was false. The obvious intention was to provoke a tax investigation of our return by the Treasury Department since we could not have reported that income in our 1992 return because my wife never received such payment." -12- 12 any other allegedly defamatory acts. There is no allegation or assertion of fact in any of these documents indicating that one of the acts for which recovery is sought consists of a BPPR auditor telling someone in the community of Coamo that Gierbolini-Marrero had been under investigation and would possibly be charged with fraud and defalcation. The appellants contend that that incident was only discovered afterwards, at which time it was promptly brought to the district court's attention through the Pagan affidavit. Appellants, however, did not move to amend their complaint to charge this alleged conduct as an additional defamatory act by BPPR. The district court and BPPR were not required to shoot at a moving target. They were entitled to proceed on the assumption that the defamation action rested on the claims in plaintiffs' complaint as confirmed in their sworn answers to interrogatories. Affirmed. -13- 13